UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MED X CHANGE, INC.,

    Plaintiff,
v.                         Case No. 8:20-cv-1223-T-33AAS

ENCIRIS TECHNOLOGIES SAS,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Enciris Technologies SAS's Motion to Compel Arbitration and Dismiss for Lack of Subject-Matter Jurisdiction or, in the alternative, Motion to Dismiss for Failure to State a Claim (Doc. # 29), filed on September 21, 2020. Plaintiff Med X Change, Inc. responded on October 13, 2020. (Doc. # 40). For the reasons set forth below, the Motion is granted in part.

**I.   Background**

Med X is a medical device manufacturer that develops and sells digital video recorders for use in surgical procedures. (Doc. # 1 at ¶ 7). Starting in 2009, Med X sourced video capture and acquisition cards for its recorders from Enciris, a video processing hardware manufacturer. (Id.; Doc. # 1-1 at 1). In 2015, Enciris's co-founder, Phillip Weissfloch,

1

approached Med X about entering into a joint venture, wherein Enciris would "develop a camera to connect to Med X's recorder, to be sold as a unit." (Doc. # 1 at ¶ 8). After negotiations, the parties entered into a joint development agreement ("JDA") on August 12, 2016. (Id.).

The JDA set out provisions for dispute resolution, among other things. (Id. at ¶ 12-13). The JDA includes a choice-of-law clause, noting that the JDA would be governed by Florida law, the state in which Med X is incorporated. (Id. at ¶ 2; Doc. # 1-1 at 12). Further, the JDA provides that disagreements under the JDA would be subject to arbitration:

> 16.2. Disputes. Subject to paragraph 16.3, any controversy, dispute, claim, question or difference with respect to or in connection with [the JDA] or the performance, enforcement, breach, termination or validity of [the JDA], including, without limitation, the determination of the scope of the [JDA] to arbitrate . . . shall be finally settled by one executive officer from each party or, if unsuccessful, arbitration set out in Schedule B hereof.

(Doc. # 1 at ¶ 11; Doc. # 1-1 at 13). Schedule B of the JDA sets forth that the arbitration would be administered by the American Arbitration Association ("AAA"), "under its Commercial Rules of Arbitration." (Doc. # 1-1 at 17). Of note, however, the JDA also provides a carveout from the arbitration requirement for any party seeking *equitable* judicial relief:

2

> 16.3.  *Judicial Relief*.  Each party acknowledges that appropriate cases (as determined by a court of competent jurisdiction) of a violation by either party of any of the provisions of [the JDA] may entitle the other party to equitable judicial relief, and this relief shall be available in addition to, and shall not be unavailable by reason of the arbitration provisions of Subsection [16.2] above.

(Doc. # 1 at ¶ 11; Doc. # 1-1 at 13).

After Med X and Enciris entered the joint venture, the parties began developing, manufacturing, and selling the camera and recorder. (Doc. # 1 at ¶ 17). However, the relationship soured. (Id. at ¶ 18-20). In April 2020, Enciris initiated arbitration proceedings against Med X, alleging various violations of the JDA. (Id. at ¶ 6; Doc. # 29 at 1). That arbitration is currently pending. (Doc. # 29 at 3).

Med X filed this suit on May 27, 2020, alleging claims for separate violations of the JDA. (Doc. # 1). The complaint includes claims against Enciris for injunctive relief for ongoing violations of Section 1114(1)(a) of the Lanham Act (Count I), injunctive relief for ongoing violations of Section 1125(a) of the Lanham Act (Count II), injunctive relief for ongoing contract breaches (Count III), and disgorgement under Section 1117(a) of the Lanham Act (Count IV). (Doc. # 1).

On September 21, 2020, Enciris moved the Court to compel

arbitration and dismiss the complaint for lack of subject-matter jurisdiction or, in the alternative, dismiss the complaint for failure to state a claim. (Doc. # 29). Med X responded (Doc. # 40), and the Motion is ripe for review.

## II. Legal Standard

Under the Federal Arbitration Act (FAA), a written arbitration provision in a "contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable," unless law or equity necessitates revocation of the contract. 9 U.S.C. § 2. Federal law favors arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. However, "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

Before deciding whether a case should be referred to arbitration, "a court must determine: (1) whether there is a valid agreement to arbitrate; (2) whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate; and (3) whether the dispute does fall within the scope – the question of arbitrability."

Convergen Energy LLC v. Brooks, No. 20-cv-3746 (LJL), 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020) (citation omitted). "The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (citation omitted). When courts determine that the threshold issue of arbitrability must be submitted to arbitration, the case is stayed pending such arbitration, rather than dismissed. Vina v. First Premier Bank, No. 8:18-cv-2902-T-33TGW, 2019 WL 144924, at *2 (M.D. Fla. Jan. 9, 2019).

"A motion to compel arbitration is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." Babcock v. Neutron Holdings, Inc., 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) (citations omitted). Accordingly, "the Court may consider matters outside the four corners of the Complaint." Id. When determining the existence of an arbitration agreement, federal courts employ a "summary judgment-like standard," "conclud[ing] as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an

5

agreement.'" Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Id. (quoting Baloco v. Drummond Co., 767 F.3d 1229, 1246 (11th Cir. 2014)).

### III. Analysis

Enciris first moves the Court to compel arbitration and to dismiss the case for lack of subject-matter jurisdiction. (Doc. # 29). Because the Court finds that the case must be stayed, it need only address this aspect of Enciris's Motion.

Enciris argues that the Court must compel arbitration because "the question of arbitrability itself is expressly delegated to the arbitrator" in the JDA. (Doc. # 29 at 9-10). Med X responds that the instant dispute is outside the scope of the JDA's arbitration clause, and it thus cannot be compelled to arbitrate. (Doc. # 40 at 5). The Court agrees that the initial question of arbitrability must be submitted to arbitration, and the Motion is therefore granted as to this requested relief.

Generally, it is for the Court to determine the scope of an arbitration agreement. Betkowski v. Kelley Foods of Ala., 697 F. Supp. 2d 1296, 1298 (M.D. Ala. Mar. 23, 2010). However,

6

"[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019). Still, "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide such issues." Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 844 (6th Cir. 2020) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69 n.1 (2010)). Thus, under this "heightened standard," the general presumption that favors arbitration is reversed "when it comes to questions of arbitrability." Id. (citing First Options, 514 U.S. at 944-45); see also JPay, Inc. v. Kobel, 904 F.3d 923, 929-30 (11th Cir. 2018) ("Questions of arbitrability . . . stay with the court unless there is clear and unmistakable evidence that the parties intended to submit such questions to an arbitrator." (citations omitted)), cert. denied, 139 S. Ct. 1545 (2019).

Courts have found that such intent is "clear and unmistakable" when "the parties expressly incorporate the AAA rules into an arbitration provision."[1] See WasteCare Corp. v.

---

1. The AAA's rules provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including

Harmony Enters., Inc., 822 F. App'x 892, 895-96 (11th Cir. 2020) (per curiam) (finding that this "alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator"), reh'g denied, No. 19-12066 (11th Cir. Sept. 14, 2020) (per curiam); see also Blanton, 962 F.3d at 846 ("[E]very one of our sister circuits to address the question . . . has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" (citations omitted)).

Here, the JDA contains an arbitration clause, and the parties do not appear to dispute its validity. (Doc. ## 29; 40). However, the clause, which is contained in paragraph 16.2 of the JDA, specifically notes that it is "[s]ubject to paragraph 16.3." (Doc. # 1-1 at 13). Paragraph 16.3, in turn, provides: "Each party acknowledges that appropriate cases (as determined by a court of competent jurisdiction) of a violation by either party of any of the provisions of [the JDA] may entitle the other party to equitable judicial relief,

---

any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." HealthplanCRM, LLC v. AvMed, Inc., 458 F. Supp. 3d 308, 321 (W.D. Pa. 2020) (citing AAA Commercial Arbitration Rule R-7(a) (2013)).

8

and this relief shall be available in addition to, and shall not be unavailable by reason of the arbitration provisions . . . above." (Id.). By virtue of this express carveout, Med X may very well be correct that its suit for only equitable relief may properly be brought in federal court. See, e.g., Cisco Sys., Inc. v. Chung, No. 19-cv-07562-PJH, 2020 WL 2747772, at *8 (N.D. Cal. May 26, 2020) (denying a motion to compel arbitration because of a similar carveout provision).

It is also true, however, that the parties agreed that an arbitrator would decide preliminary issues of arbitrability: "[A]ny controversy, dispute, claim, question or difference with respect to or in connection with [the JDA] . . . *including, without limitation, the determination of the scope of the [JDA] to arbitrate* . . . shall be finally settled by one executive officer from each party or, if unsuccessful, arbitration in accordance with the terms set out in Schedule B[.]" (Doc. # 1-1 at 13 (emphasis added)). Paragraph 16.3, which contains the carveout for equitable relief, does not apply to the threshold issue of arbitrability. And, the arbitration clause, in addition to providing that an arbitrator may determine the scope of arbitration, expressly incorporates the AAA's rules in Schedule B. (Doc. # 1-1 at 13, 17). Accordingly, the parties have "clearly and

9

unmistakably" delegated the preliminary question of arbitrability to an arbitrator. See Blanton, 962 F.3d at 848 ("But to the extent that Piersing's arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA rules.").

Therefore, although it may be true that the instant suit is justiciable, the Court must follow binding Supreme Court and Eleventh Circuit precedent, which dictates that "a court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.'" Henry Schein, 139 S. Ct. at 529 (quoting AT & T Techs., Inc. v. Commc'ns. Workers, 475 U.S. 643, 649-50 (1986)).

Indeed, this case is comparable to the recent Eleventh Circuit case, WasteCare Corp. v. Harmony Enters., Inc., 822 F. App'x 892 (2020). There, the Court faced a similar carveout provision in the parties' arbitration agreement, which provided: "In the event that any controversy or claim *(excepting claims as to which party may be entitled to equitable relief)* arising out of this Agreement cannot be settled by the parties hereto, such controversy or claim shall be settled by arbitration in accordance with the then current

10

commercial rules of arbitration of the [AAA]." WasteCare, 822 F. App'x at 894 (emphasis added). By virtue of this carveout, and because the plaintiff in WasteCare sought only equitable relief in its amended complaint, the district court denied the defendant's motion to compel arbitration. Id. However, the Eleventh Circuit found that the district court abused its discretion in doing so. Id. at 896. The Eleventh Circuit held that by simply citing to the application of the AAA's rules, even with the carveout, the parties had clearly and unmistakably delegated the threshold question of arbitrability to an arbitrator. Id. at 895-96.

Here, not only have the parties incorporated the AAA's rules in their arbitration clause, but they have also expressly stipulated that the scope of arbitration would be determined by an arbitrator. (Doc. # 1-1 at 13, 17). Thus, despite the seemingly plain carveout clause, "the Court must compel arbitration so that an arbitrator can rule on the threshold issue of arbitrability of claims for [equitable] relief." Manlove v. Volkswagen Aktiengesellschaft, No. 1:18-cv-145, 2019 WL 2291890, at *3 (E.D. Tenn. Jan. 11, 2019); see also WasteCare, 822 F. App'x at 896 ("Although WasteCare's claims may indeed be equitable ones, that confuses the question of who decides arbitrability with the separate

11

question of who prevails on arbitrability. . . . Here, the parties expressly delegated the arbitrability issue to an arbitrator. Thus, the arbitrator must decide whether WasteCare can litigate its claims in district court." (citations omitted)).

Consequently, this case must be stayed pending the arbitrator's ruling on the preliminary issue of arbitrability. See Milestrone v. Citrus Specialty Group, Inc., No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) ("In accord with Eleventh Circuit law, this case must be stayed rather than dismissed." (citing 9 U.S.C. § 3)). Because the Court finds that a stay is appropriate, it will not decide Enciris's Motion to Dismiss for failure to state a claim at this juncture. See, e.g., Haier U.S. Appliance Sols., Inc. v. Appliance Recycling Ctrs. of Am., Inc., No. 3:17-CV-242-TBR, 2017 WL 6347968, at *3-4 (W.D. Ky. Dec. 12, 2017) (delaying deciding a motion to dismiss pending the arbitrator's determination of threshold questions of arbitrability).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Enciris Technologies SAS's Motion to Compel (Doc. # 29) is **GRANTED** to the extent it seeks an order

compelling arbitration. The Motion is **DENIED** to the extent it seeks dismissal of the Complaint.

(2) This case is referred to arbitration and is **STAYED** pending the arbitrator's ruling on the threshold issue of arbitrability. The Clerk is directed to **STAY** and administratively **CLOSE** the case.

(3) The parties are **DIRECTED** to file a joint report of the status of the arbitration proceeding by December 28, 2020, and every sixty days thereafter. The parties must immediately notify the Court upon the arbitrator's determination of the threshold issue of arbitrability.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of October, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE